J-S04028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: K.M.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1623 MDA 2017 |

Appeal from the Decree September 14, 2017
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  31-2016-0045

| | | |
|---|---|---|
| IN RE: B.J.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1624 MDA 2017 |

Appeal from the Decree September 14, 2017
In the Court of Common Pleas of Huntingdon County Orphans' Court at
No(s):  31-2016-0046

BEFORE:  SHOGAN, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED MARCH 29, 2018**

In these consolidated appeals, K.R. ("Father") appeals from the Decrees entered September 14, 2017, granting the Petitions filed by K.M.I. ("Mother") and involuntarily terminating Father's parental rights to his daughter, K.M.R., born in April of 2009, and son, B.J.S., born in May of 2012 (collectively, "Children"), pursuant to sections 2511(a)(1) and (b) of the Adoption Act. We affirm.

**SUMMARY OF FACTS AND PROCEDURAL HISTORY**

Mother and Father (collectively "Parents") are the natural parents of Children. Parents never married and separated in December 2011, shortly before B.J.S. was born. Mother married her current spouse ("Stepfather") in September 2013. Children reside with Mother and Stepfather, along with their half-sibling, R.I., and Stepfather's daughter from a previous relationship.

From Parents' separation until August 2013, Father exercised periods of partial custody of K.M.R., one day every other week. Father never exercised any periods of custody of B.J.S. In August 2013, Father was incarcerated for receiving stolen property and violating his probation imposed in connection with a 2011 drug conviction. The court sentenced him to nine to twenty-three months' incarceration in county jail, and two and a half to five years in state prison.

On December 27, 2016, Mother filed a Petition to Involuntarily Terminate Father's parental rights to Children. On February 16, 2017, the orphans' court appointed counsel and a guardian *ad litem* for Children. The court held a hearing on Mother's petition on July 21, 2017.[1] On September 14, 2017, the orphans' court entered its findings of fact and Decrees terminating Father's parental rights. Father timely filed a Notice of Appeal on October 16, 2017, along with concise statements of errors complained of on

_____

[1] At the time of the July 17, 2017 termination hearing, Father was out on parole.

appeal as required by Pa.R.A.P. 1925(a)(2)(i) and (b)(1). The orphans' court

filed a Rule 1925(a) Opinion, titled "Order," on November 3, 2017.

**ISSUES ON APPEAL**

Father now raises the following issues for our review.[2]

1. Did the [orphans'] court err in ordering the involuntary termination of Father's parental rights in that there was no clear, convincing and sufficient evidence that Father had, for a period of at least six months immediately prior to the filing of the [Involuntary Termination of Parental Rights] Petition, either evidenced a settled purpose of relinquishing his parental rights to these children, or had failed or refused to perform parental duties?

2. Did the [orphans'] court err in ordering the involuntary termination of Father's parental rights in that there was not clear, convincing and sufficient evidence that the termination of Father's parental rights was in the best interest of each child, particularly regarding the evaluation of the parent/child attachment (bond) and the effect of the permanent severing of that attachment (bond) on each child?

Father's Brief at 3 (orphans' court's answers and suggested answers omitted).

**LEGAL ANALYSIS**

We review an appeal from the termination of parental rights in

accordance with the following standard.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest

---

[2] Father framed his issues somewhat differently in his concise statement, but we find them sufficiently preserved for our review.

unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, governs the termination of parental rights and requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1) and (b), which provide as follows:

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

**Termination Pursuant to Section 2511(a)(1)**

To meet the requirements of section 2511(a)(1), "the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties." *In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (citing *In re Adoption of R.J.S.*, 901 A.2d 502, 510 (Pa. Super. 2006)). The court must then consider "the parent's explanation for his or her conduct" and "the post-abandonment contact between parent and child" before moving on to analyze Section 2511(b). *Id.* (quoting *In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998)).

This Court has explained that a parent does not perform his or her parental duties by displaying a "merely passive interest in the development of the child." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (quoting *In re C.M.S.*, 832 A.2d 457, 462 (Pa. Super. 2003)). Rather,

[p]arental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* (citation omitted). Critically, incarceration does not relieve a parent of the obligation to perform parental duties. An incarcerated parent must "utilize available resources to continue a relationship" with his or her child. *In re Adoption of S.P.*, 47 A.3d 817, 828 (Pa. 2012) (discussing *In re Adoption of McCray*, 331 A.2d 652 (Pa. 1975)).

Instantly, Father argues that the orphans' court erred by terminating his parental rights because it failed to consider "the efforts that [Father] did make while incarcerated to establish contact with his children, as well as the role the hostility and/or indifference of Mother [ ] and her family played in thwarting those efforts by Father." Father's Brief at 8. In particular, Father asserts that he did not have Mother's current address or phone number, but sent a letter to Mother at a prior address asking to see Children. Father also suggests that he did not file any custody motions or petitions with the orphans' court because he could not afford an attorney while incarcerated. *Id.*

The orphans' court addressed Father's issue as follows:

[Father] points to his "periodic involuntary incarceration" as an explanation for his failure as a parent for over three (3) years. He

asserts correctly that incarceration is in itself insufficient to warrant termination. *See [I]n re Adoption of McCray*, [ ] 331 A.2d 652, 655 ([Pa.] 1975). However, [Father] failed to note that Chief Justice Jones in *McCray* indicated that the Supreme Court was "not willing to completely toll a parent's responsibilities during his or her incarceration. Rather, we must inquire whether the parent has utilized those resources at his or her command in prison in continuing a close relationship with the child. Where the parent does not exercise reasonable firmness 'in declining to yield to obstacles,' his other rights may be forfeited. *See In Re: Adoption of J R F*, 27 Somerset L.J. at 304." [McCray, 331 A.2d at 655.].

In this case the evidence was clear. [Father] did absolutely nothing while he was incarcerated to maintain a relationship with his daughter or to establish a relationship with his son. Nor did he take any steps to improve his parenting skills.

Also, in his Rule 1925 Statement, [Father] [c]laims that [Mother] "actively thwarted" his efforts to be a father to his daughter and refused to follow the custody order. However, at [the] hearing no evidence was introduced that supports either claim.

Orphans' Court Order, filed 11/3/2017, at 4-5 (some internal citations omitted).

After reviewing the record, we conclude that the orphans' court did not abuse its discretion in terminating Father's parental rights under section 2511(a)(1). Father did very little to fulfill his parental duties since his last contact with Children in August 2013. Specifically, the record reveals that Father attempted to contact Mother about visits with Children on only two occasions since his incarceration in August 2013. Father never made phone calls to Children, sent gifts, or financially supported Children in any way. Further, Father neither attempted to modify the existing custody order to

permit periods of partial custody of B.J.S. nor petitioned to enforce the custody order as it pertained to K.M.R.

Because Father failed to act affirmatively in order to maintain his relationship with Children, the trial court did not err in concluding that Mother proved the statutory elements for termination under Section 2511(a)(1). **See B., N.M.**, 856 A.2d at 855 (explaining that a parent "must exercise reasonable firmness in resisting obstacles" which limit his or her ability to maintain a parent/child relationship). The record confirms that Father refused or failed to perform parental duties during the six months immediately preceding the filing of the termination petition. It was within the court's discretion to accept the testimony of Mother, and to conclude that Father made no effort to contact Children during the relevant six months. Accordingly, we discern no abuse of discretion.

### Termination Pursuant to Section 2511(b)

We next consider whether the orphans' court erred or abused its discretion by terminating Father's parental rights pursuant to Section 2511(b).

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.

> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (citations and quotation marks omitted).

Here, Father argues that although Children may have "developed a positive attachment with their stepfather," the record contains insufficient evidence regarding the strength of Father's bond with Children. Father's Brief at 11. Father contends that "it is a reasonable conclusion to draw from [Appellant's] testimony and from the time line of events in this case that Mother [K.M.]I. had exhibited a settled purpose to block K.R. from establishing a relationship … with both children after [K.M.]I.'s 2013 marriage to W.I." *Id*. at 9. The orphans' court found that terminating Father's parental rights would best serve Children's needs and welfare. Orphans' Court Opinion, 11/3/2017, at 6. The court reasoned that Father has never had a relationship with B.J.S., and that any bond that may have existed between Father and K.M.R. faded due to Father's lack of contact with K.M.R. since his incarceration in August 2013. The court also concluded that Appellant failed to introduce any evidence to support his claim that Mother "'actively thwarted' his efforts to be a father

to his daughter and refused to follow the custody order." Orphans' Court Order at 5.

We again discern no abuse of discretion. The record supports the conclusion that Children enjoy the intangibles of love, comfort, security, and stability while in the custody of Mother and Stepfather. For instance, Mother testified that K.M.R. identifies Stepfather as her father. Specifically, Mother recalled that K.M.R.

> actually signed up for softball – it would have been last summer – and they gave her her shirt which, of course would say [Father's last name] on the back. [K.M.R.] refused to wear it. . . . [b]ecause she said her last name is not [Father's last name]. So they had got [sic] her a ball shirt that said [Stepfather's last name] and she proudly wore it.

N.T., 7/21/2017, at 11. Moreover, Mother testified that K.M.R. uses Stepfather's last name when writing her name on school papers, and that K.M.R.'s teachers know to identify her by Stepfather's last name. *Id.*

Further, Children's legal counsel and guardian *ad litem* both noted on the record that they supported the termination of Father's parental rights. N.T., 7/21/2017, at 47-48. In particular, Children's legal counsel testified that during his interview of Children, Children identified Stepfather as their Father. *Id.* at 48.

Our review of the certified record, including the hearing testimony, confirms the orphans' court observation that there was no evidence presented at the hearing to support his claim of Mother's "actively thwarting" his connection with Children. Although Father's love for Children is not in

- 10 -

question, along with his desire for an opportunity to serve as Children's father, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *See In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). A child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *In re Z.S.W.*, 946 A.2d at 732. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d at 856.

Instantly, the orphans' court found that Father has not provided for Children's developmental, physical and emotional needs and welfare. As there is competent evidence in the record that supports the orphans' court's credibility and weight assessments regarding Children's needs and welfare, we conclude the orphans' court did not abuse its discretion as to section 2511(b). As such, the orphans' court properly granted Mother's petition to terminate Father's parental rights to Children.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/29/2018